UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HENRIETTA GOODWIN,
    Plaintiff,

  v.                                              CIVIL ACTION NO.
                                                      09-10463-MBB

BRITISH AIRWAYS PLC,
    Defendant.

**MEMORANDUM AND ORDER RE:
DEFENDANT BRITISH AIRWAYS PLC'S
MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 22);
AND PLAINTIFF HENRIETTA GOODWIN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(DOCKET ENTRY # 20)**

**August 8, 2011**

**BOWLER, U.S.M.J.**

    Pending before this court are cross motions for summary judgment filed by plaintiff Henrietta Goodwin ("plaintiff") (Docket Entry # 20) and by defendant British Airways PLC ("defendant" or "British Airways") (Docket Entry # 22). After conducting a hearing on July 26, 2011, this court took the motions (Docket Entry ## 20 & 22) under advisement.

<u>PROCEDURAL BACKGROUND</u>

    This action arises out of a fall plaintiff experienced on April 17, 2008, while disembarking from British Airways flight

304 in Paris. Plaintiff alleges that British Airways was negligent in failing to take all necessary precautions to prevent the accident that resulted in her injury. (Docket Entry # 1). Specifically, plaintiff contends that British Airways failed to prevent another passenger from bumping into her as she was exiting the aircraft causing her to fall and fracture her left ankle. (Docket Entry ## 21 & 26).

In seeking summary judgment, British Airways argues the event that caused plaintiff's fall was not an "accident" within the meaning of Article 17 of the Montreal Convention.[1] (Docket Entry # 23). Defendant also submits that even if the event causing plaintiff's injury was an "accident" under the Montreal Convention, it is nevertheless entitled to an order limiting damages to the cap set forth in Article 21(2) of the Montreal Convention. Plaintiff's motion for partial summary judgment seeks a determination that the Article 21(2) damage cap does not apply. (Docket Entry ## 21 & 26).

## STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Davila v. Corporacion De

---

[1] The treaty is formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (henceforth "Montreal Convention").

2

Puerto Rico Para la Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007). Summary judgment is appropriate when the record shows "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Id. Facts are viewed in favor of the non-movant. See Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

Where, as here, the parties filed cross motions for summary judgment, the court must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004). "It is not for the court on summary judgment to weigh the evidence 'but to determine whether there is a genuine issue for trial.'" Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249(1986)). Each summary judgment motion is reviewed separately and factual disputes are resolved in favor of the nonmoving party. See Saenger

Organization, Inc. v. Nationwide Insurance Licensing Associates, 119 F.3d 55, 56 (1st Cir. 1997).

Local Rule 56.1 provides that summary judgment motions and oppositions thereto are to be accompanied by statements of material facts of record, with page references to affidavits, depositions and other documentation. Any facts set forth in a moving party's Local Rule 56.1 statement of material facts are deemed admitted if they are not otherwise contested. Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003); see also Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing Local Rule 56.1 and deeming admitted the undisputed material facts that the plaintiff failed to controvert).

## FACTUAL BACKGROUND

The following facts are undisputed. On April 17, 2008, plaintiff, her husband and granddaughter arrived in Paris on British Airways flight 304. (Docket Entry # 23-1, Ex. A; Docket Entry # 24, ¶¶ 4-5; Docket Entry # 26, p. 2, ¶¶ 4-5). Plaintiff sat in seat 12A about midway down the aircraft and, upon arrival in Paris, began to disembark with the other passengers. (Docket Entry # 23-1, Ex. A; Docket Entry # 24, ¶ 5; Docket Entry # 26, p. 2, ¶ 5). As plaintiff approached the front of the aircraft, she paused to shake hands with a flight attendant stationed at the aircraft's door. (Docket Entry # 24, ¶ 6; Docket Entry # 26,

p. 2, ¶ 6).  At that time, both the flight attendant and plaintiff's granddaughter warned plaintiff to be "careful of the lip" when stepping off the aircraft.  (Docket Entry # 24, ¶ 7; Docket Entry # 26, p. 2, ¶ 7).  Soon after shaking hands with the flight attendant, "[p]laintiff lost her balance and the tip of her left foot slid into the narrow opening between the jet way and the aircraft door."[2]  (Docket Entry # 24, ¶ 9; Docket Entry # 26, ¶ 9).

The facts are disputed regarding the actual cause of plaintiff's fall.  Plaintiff testified in deposition that she was bumped by another passenger, or the passenger's luggage, as he pushed by her to exit the aircraft.  (Docket Entry # 20-2, Ex. A, pp. 33-34, 54, 62-65).  Plaintiff's granddaughter also testified in deposition that her grandmother was struck by another passenger but, when pressed, could not say that she actually saw contact between her grandmother and the other passenger.  (Docket Entry # 20-2, Ex. B, pp. 53, 82 & 84).  British Airways, relying upon the testimony of a member of the ground crew at Charles de Gaulle Airport, contends that plaintiff was never actually struck by another passenger.  Rather, she lost her footing and fell on her own.  (Docket Entry # 23-1, Ex. E, pp. 19-21, 23-24).  As set forth above, this court does not weigh the merits of competing

---

[2] Plaintiff alleges that she fractured her left ankle as a result of the accident.

evidence on summary judgment. Rather, facts are viewed in the light most favorable to the nonmoving party. <u>Saenger Organization, Inc. v. Nationwide Insurance Licensing Associates</u>, 119 F.3d 55, 56 (1st Cir. 1997). Accordingly, for the purpose of ruling on British Airways' motion, this court assumes that plaintiff was struck by another passenger while exiting the aircraft and, as a result, lost her footing and fell.

## DISCUSSION

The parties agree that the Montreal Convention, which by its terms "applies to all international carriage," governs plaintiff's claim. The Montreal Convention "was the product of a United Nations effort to reform the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists.'" <u>Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co., Ltd.</u>, 522 F.3d 776, 780 (7th Cir. 2008) (quoting <u>Ehrlich v. American Airlines, Inc.</u>, 360 F.3d 366, 371 n. 4 (2nd Cir. 2004)). The Montreal Convention, which "unifies and replaces" the Warsaw Convention, attempts to "balance the interests of air carriers and potential plaintiffs." <u>Id.</u> at 789. It achieves this purpose "by limiting air carriers' potential liability to predictable, non-catastrophic damages and also by preserving a plaintiff's right to recover its losses up to a certain amount." <u>Id.</u> at 776 & 780. The preamble expressly

recognizes "'the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution.'" Id. at 781 (quoting preamble).

Although the Montreal Convention is undeniably "an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention," Ehrlich v. American Airlines, 360 F.3d at 371 n. 4, a number of "the provisions of the Montreal Convention are taken directly from the Warsaw Convention and the many amendments thereto." Best v. BWIA West Indies Airways Ltd., 581 F.Supp.2d at 362. Hence, case law interpreting provisions of the Warsaw Convention applies to cases interpreting "substantively similar" provisions of the Montreal Convention. See id.; Baah v. Virgin Atlantic Airways Ltd., 473 F.Supp.2d 591, 596-97 (S.D.N.Y. 2007); accord Hutchinson v. British Airways PLC, 2009 WL 959542, *3 (E.D.N.Y. April 6, 2009) (courts rely "'on cases interpreting a provision of the Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same'"); Ugaz v. American Airlines, Inc., 576 F.Supp.2d at 1360 ("appropriate to rely on cases interpreting the Warsaw [C]onvention where the equivalent provision of the Montreal Convention is substantively the same").

Article 17(1) of the Montreal Convention, which is substantively identical to the corresponding provision in the

7

Warsaw Convention,[3] provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734, Article 17(1). Thus, the threshold inquiry of any claim for personal injury under the Montreal Convention is whether an "accident," as recognized under the treaty, occurred. Gotz v. Delta Air Lines, Inc., 12 F.Supp.2d 199, 201 (D.Mass. 1998).

A two prong test applies to determine whether an "accident" under the Montreal Convention has occurred. See id. at 202 (discussing Air France v. Saks, 470 U.S. 392, 399 (1985)). To determine that an "accident" occurred, the evidence must demonstrate "that (1) an unusual or unexpected event that was

---

[3] Article 17 of the Warsaw Convention provides:

> The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C. § 1502.

external to [the plaintiff] occurred, and (2) this event was a malfunction or abnormality in the aircraft's operation." Id. at 201-02 (discussing Saks, 470 U.S. at 399). Here, the event causing plaintiff's injuries satisfies the first but fails the second prong of the analysis. Each issue is addressed in turn below.

1. Unusual or Unexpected Event

The first prong of the analysis under the Montreal Convention requires that an "accident" involve "an unexpected or unusual event or happening that is external to the passenger." Air France v. Saks, 470 U.S. at 397-400; see also Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 70-71 (1st Cir. 2000); Gotz v. Delta Air Lines, Inc., 12 F.Supp.2d at 201-02. An "accident" under the Montreal Convention does not occur if the injury at issue resulted from a "passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." Air France v. Saks, 470 U.S. at 405-06; see also El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 172 (1999) (quoting Saks for proposition that no accident occurs when injury "'indisputably resulted from passenger's own internal reaction to the usual, normal, and expected operation'" of aircraft). Where, as here, an injury results from a physical collision with another passenger, courts have held that such an event is "quintessentially external" and satisfies the first prong of the

9

accident analysis.  <u>Garcia Ramos v. Transmeridian Airlines, Inc., et al.</u>, 385 F.Supp.2d 137, 141 (D.P.R. 2005).

In <u>Garcia</u>, the plaintiff suffered a broken arm when another passenger lost his balance and fell on her while attempting to get to his seat on the aircraft. <u>Id.</u> There, the court held that, "An unnamed passenger falling onto Plaintiff is certainly an accident in the sense of being an 'unexpected or unusual event.'" <u>Id.</u> Analogizing the incident to unexpectedly being struck by a falling bottle and citing <u>Maxwell v. Aer Lingus Ltd.</u>, 122 F.Supp.2d 210, 211 (D.Mass. 2000), or to being "bumped by a stumbling drunk or a reclining seat," the court in <u>Garcia</u> explained that a reasonable passenger would not expect a fellow passenger to fall on top of him. <u>Garcia Ramos v. Transmeridian Airlines, Inc., et al.</u>, 385 F.Supp.2d at 141. "The fall, though a known risk, is not an expected or usual event." <u>Id.</u>

Relying primarily on the <u>Garcia</u> decision, British Airways contends that some jostling during disembarkation is part and parcel of air travel and, as a result, the event causing plaintiff's injuries cannot be considered an unexpected or unusual event. <u>Garcia</u>, however, does not support the proposition that bumping or jostling on an aircraft to any degree is always usual and expected. Rather, <u>Garcia</u> distinguishes between run of the mill jostling amongst passengers and being bumped by a stumbling drunk. While the former may be usual and expected, the

10

latter is not.  Id.[4]

Likewise, plaintiff may reasonably expect some jostling or other physical contact during deplaning but a reasonable passenger does not expect to be struck so severely to be caused to lose his or her balance.  Accordingly, viewing the facts in a light most favorable to plaintiff, this court finds that plaintiff's testimony that she felt a hard bump from behind satisfies the first prong of the accident analysis.  (Docket Entry # 20-2, Ex. A, p. 54 ("All I know is it hit me hard enough and with enough force that it knocked me off my balance and I fell . . ..")).

2. Operation of the Aircraft

The second prong of the accident analysis requires that the unexpected or unusual event relate to the operation of the aircraft in order for it to be an "accident" under the Montreal Convention.  See Garcia Ramos v. Transmeridian Airlines, Inc., et

---

[4]  The relevant portion of the decision reads as follows:

> While a reasonable passenger would expect some jostling or other physical contact when other passengers are attempting to reach their seats, a reasonable passenger would not expect a fellow passenger to fall on top of him.  The fall, though a known risk, is not an expected or usual event.  Accordingly, we find that Plaintiff suffered her injuries as a result of an unexpected or unusual event that satisfies the first prong of the Warsaw "accident" analysis.

Garcia Ramos v. Transmeridian Airlines, Inc., et al., 385 F.Supp.2d at 141-42.

11

al., 385 F.Supp.2d at 142; Gotz v. Delta Air Lines, Inc., 12 F.Supp.2d at 203. The principle "that the alleged accident must relate to the operation of the aircraft has its source in the treatise of Professor D. Goedhuis, the reporter for the drafting of the Warsaw Convention." Garcia Ramos v. Transmeridian Airlines, Inc., et al., 385 F.Supp.2d at 142; accord Gotz v. Delta Air Lines, Inc., 12 F.Supp.2d at 203. As reasoned by Professor Goedhuis, "'[t]he carrier does not *guarantee* safety; he is only obliged to take all the measures which a good carrier would take for the safety of his passengers.'" D. Goedhuis, National Air Legislations and the Warsaw Convention, The Hague (1937).

Events causing injury that relate to the aircraft's operation include where there is direct flight crew involvement. See Maxwell v. Aer Lingus Ltd., 122 F.Supp.2d at 213; Garcia Ramos v. Transmeridian Airlines, Inc., et al., 385 F.Supp.2d at 142. For example, when a passenger was injured by liquor bottles that fell from an overhead bin, the event was held to relate to the aircraft's operation because the flight crew was obligated to secure overhead bins before takeoff. Maxwell v. Aer Lingus Ltd., 122 F.Supp.2d at 213. Likewise, where assistance is sought from the flight crew and the flight crew either refuses to assist or assists in a negligent manner, the occurrence is related to the operation of the aircraft. See Garcia Ramos v. Transmeridian

Airlines, Inc., et al., 385 F.Supp.2d at 142 (use by flight attendant of scalding compress to alleviate minor's earache and refusal of flight attendant to assist passenger in switching seats are both "accidents"). Where, however, there is no direct involvement by the flight crew, the event cannot be related to the aircraft's operation. See id.

Garcia is particularly instructive. As set forth above, the plaintiff in Garcia suffered injury when another passenger fell on her while passing to his seat on the aircraft. The court held that, "The passenger stepping over Plaintiff had no relation to the operation of the aircraft, nor did it require the aid of any flight crew personnel." Garcia Ramos v. Transmeridian Airlines, Inc., et al., 385 F.Supp.2d at 142. "Unlike cases where there was some direct flight crew involvement, there was none here that would indicate that the accident was caused by the operation of the aircraft." Id. The court reasoned that the flight crew was "in no better position to detect and avoid the dangers inherent in walking and sitting down than the passengers." Id. Moreover, because assistance was never sought of the flight crew and because there was nothing about the circumstances that would naturally require the assistance of the crew, "there was no malfunction or abnormality in the aircraft's operation." Id. at 143. Despite the fact that the change of seats in Garcia was initiated by the flight crew and presumably overseen by the

flight attendant making the request, the court nevertheless held that the flight crew was not directly involved in such a way as to relate the injury causing event to the aircraft's operation. Id. at 142-43.

Likewise, in Gotz v. Delta Air Lines, Inc., 12 F.Supp.2d at 203, the plaintiff tore both rotator cuffs after being startled by another passenger while attempting to lift his luggage into the overhead bin. Despite the plaintiff in Gotz having asked a flight attendant to store his luggage elsewhere on the aircraft and having been subsequently ordered to place his bag in the overhead bin, the court found no evidence that the incident was in the airline's purview or control. See id. at 204 ("He did not seek help in placing his bag in the overhead compartment . . ..").

Here, as in Garcia and Gotz, there is no evidence that the incident was in the airline's purview or control. Plaintiff does not contend that the airline directly caused her injuries, nor does she aver that she sought any affirmative assistance from the flight crew. Rather, plaintiff contends that she was bumped by another passenger during the disembarking process. As observed by the court in Garcia, "a flight crew is in no better position to detect and avoid the dangers inherent in walking" than its passengers. Garcia Ramos v. Transmeridian Airlines, Inc., et al., 385 F.Supp.2d at 143.

Moreover, there is no evidence that the airline was obligated to intervene at any time during the deplaning process. While plaintiff refers to regulations requiring that the flight crew be located by the exits on an aircraft in the event of an emergency, she does not contend that an emergency gave rise to her injury.[5] Likewise, while plaintiff's granddaughter testified that the passengers on the plane were in a "big hurry to get out" (Docket Entry # 20-2, Ex. B, p. 52), there is no evidence that conditions during disembarkation on April 17, 2008, were out of the ordinary. Indeed, plaintiff was not persuaded by the conditions during disembarking to alter her general course of conduct in pausing at the front of the aircraft to thank and shake the flight attendant's hand. (Docket Entry # 20-2, Ex. A, p. 51). If a passenger perceived any cause for concern during a deplaning process, he would reasonably forego pleasantries at the door in favor of a more expedient exit or otherwise take

---

[5] In contrast to the circumstances in Maxwell v. Aer Lingus Ltd., 122 F.Supp.2d at 213, where the court identified an obligation of the flight crew to secure items in overhead storage, plaintiff can point to no comparable obligation of the flight crew to ensure that passengers are not jostled. Rather, as observed in Garcia, some degree of jostling is presumed and considered normal. Garcia Ramos v. Transmeridian Airlines, Inc., et al., 385 F.Supp.2d at 143. Moreover, to the extent plaintiff was bumped by another passenger who unexpectedly pushed through to the exit in a fit of impatience, the incident would be akin in character to the "spontaneous fistfight" referenced in Maxwell, which is outside of an airline's purview or control and for which no liability can be found. See Maxwell v. Aer Lingus Ltd., 122 F.Supp.2d at 212.

15

reasonable precautions against potential injury. It can be inferred from plaintiff's lack of concern that nothing about the disembarking process was out of the ordinary.

The fact that the incident giving rise to plaintiff's injury occurred in front of a flight attendant is also immaterial to the analysis. Just as in Gotz, where a flight attendant was present to oversee the placement of luggage in overhead bins, or in Garcia, where a flight attendant requested that passengers change seats, the mere passive presence of flight crew is insufficient to establish that an incident is related to the operation of an aircraft.

Finally, plaintiff cites Kwon v. Singapore Airlines, 356 F.Supp.2d 1041 (N.D.Cal. 2003), in support of the proposition that an incident need not bear any relation to the aircraft's operation to be considered an "accident" under the Montreal Convention. Plaintiff's reliance on Kwon is misplaced. As a case out of the Northern District of California, Kwon recites Ninth Circuit law which differs from the foregoing District of Massachusetts law with respect to this issue. Here, the two prong accident analysis articulated in Gotz and Garcia is well settled. Plaintiff may not avoid the application of the two prong test in Massachusetts by selectively relying upon the law of other districts.

In summary, the event giving rise to plaintiff's injury did

16

not relate to the aircraft's operation and, therefore, does not satisfy the second prong of the "accident" analysis articulated in Gotz and Garcia. Given that this issue is dispositive of plaintiff's claim, this court need not reach the merits of the argument raised in British Airways' motion for summary judgment and in plaintiff's motion for partial summary judgment regarding whether the Article 21(2) damage limitation applies. Plaintiff's motion for partial summary judgment, which also seeks a determination of the damage limitation, is moot.

## CONCLUSION

In accordance with the foregoing discussion, the summary judgment motion of British Airways (Docket Entry # 22) is **ALLOWED**. Plaintiff's motion for partial summary judgment (Docket Entry # 20) is **DENIED**. A final judgment shall issue in accordance with this opinion.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge